**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NAD ALI IBRAHIMI, | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-00768-XR |
| | § | |
| PAM BONDI, KRISTI NOEM, TODD M. | § | |
| LYONS, LETICIA DIAZ,   WARDEN | § | |
| SOUTH   TEXAS   ICE   PROCESSING | | |
| CENTER, | | |
| *Respondents* | | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Nad Ali Ibrahimi's Petition for a Writ of Habeas Corpus (ECF No. 1) and the Federal Respondents' response (ECF No. 7). After careful consideration, the Petition (ECF No. 1) is **GRANTED**.

## BACKGROUND

Petitioner challenges the legality of his immigration-related detention. *See generally* ECF No. 1. He is a native of Russia and citizen of Afghanistan. ECF No. 7 at 2. He was apprehended the same day he entered the country and has now been in government custody for over three years.

### I. Facts

On February 15, 2023, Petitioner entered the United States without admission or inspection near Eagle Pass, Texas. *Id.* Immigration authorities detained him and charged him as inadmissible under 8 U.S.C. § 1182 that same day. *Id.* These officers also elected to criminally charge Petitioner under 19 U.S.C. § 1459(e)(1). ECF No. 7-1 at 1. This provision makes it unlawful to enter outside a designated port of entry without immediately presenting oneself to a customs officer for inspection. *See* 19 U.S.C. § 1459(a). Petitioner was sentenced to prison for eight months. *See United States v. Ibrahimi*, ECF No. 8, 2:23-cr-00608-AM (W.D. Tex. Nov. 7, 2023).

After his prison term ended, officials transferred Petitioner to immigration detention. ECF No. 7 at 2. An immigration judge denied Petitioner's claims for relief and ordered his removal in March 2024. *Id.* at 2. On May 30, 2024, the Board of Immigration Appeals dismissed Petitioner's appeal of that order, making Petitioner's removal order administratively final. ECF No. 7 at 2.

Petitioner has now been in post-removal-order detention for 669 days—roughly 22 months.

## LEGAL STANDARD

### I. Writ of Habeas Corpus

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

### II. *Pro Se* Construction

The Court notes that Plaintiff proceeds *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a party's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Likewise, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995)).

## DISCUSSION

Petitioner challenges the legality of his post-removal-order detention. ECF No. 1. The Federal Respondents claim that two statutory sections authorize his detention.

### I. 8 U.S.C. § 1225 Does Not Authorize Detention After Proceedings Concluded

Respondents first assert that Petitioner is lawfully detained under 8 U.S.C. § 1225(b). ECF No. 7 at 4–5. But that statutory section permits detention only "until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). "Section 1225(b)(1) aliens are detained for 'further consideration of the application for asylum,' and §1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under §1225(b) must end as well." *Id.*

Here, Petitioner has a final order of removal. He is no longer being considered for asylum, so Section 1225(b)(1) does not authorize his detention. And his removal proceedings ended with his final removal order, so Section 1225(b)(2) does not authorize his detention either. *See* 8 U.S.C. § 1229a(c)(1)(A) (noting that the "conclusion of [removal] proceeding" occurs when the immigration judge "decide[s] whether [the] alien is removable").

### II. 8 U.S.C. § 1231(a)(6) Does Not Authorize Petitioner's Continued Detention

Respondents next argue that 8 U.S.C. § 1231 "mandates" Petitioner's detention. ECF No. 7 at 1. This section "authorizes the detention of aliens who have already been ordered removed from the country." *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018). "Under this section, when an

alien is ordered removed, the Attorney General is directed to complete removal within a period of 90 days, . . . and the alien must be detained during that period." *Id.*

If the government fails to remove the alien during that period, the Government may exercise discretion to continue detaining certain aliens for as long as is "reasonably necessary" to secure their removal. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(6). But this discretion is not "unlimited." *Zadvydas*, 533 U.S. at 697. Under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized."[1] *Id.* at 699. Thus, a court assessing detention *beyond* the removal period must ask "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

To aid this inquiry, the *Zadvydas* court recognized a "presumptively" reasonable period of post-removal-order detention lasting six months. *Id.* A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must prove "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* To make out a *Zadvydas* claim *after* the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Here, the Federal Respondents make three arguments that Section 1231 and *Zadvydas* permit Petitioner's detention.

---

[1] *Id.* at 699. The *Zadvydas* Court limited its holding to "aliens who were admitted to the United States but subsequently ordered removed." *Id.* at 682. But the Supreme Court later extended the holding to aliens who, like Petitioner, were never admitted and charged as inadmissible under 8 U.S.C. § 1182. *Clark v. Suarez Martinez*, 543 U.S. 371 (2005).

4

**A. Section 1231 Does Not *Mandate* Detention**

First, the Federal Respondents claim that, because Petitioner is subject to a final order of removal, 8 U.S.C. § 1231 "mandates" his detention. ECF No. 7 at 1. This argument conflicts with the statute's text and the Supreme Court's holding in *Zadvydas*. Section 1231 states that an alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . *may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added). The Supreme Court recognized that this authority is discretionary. *See Zadvydas*, 533 U.S. at 697 (noting that Section 1231 provides the Attorney General with less than "unlimited discretion" to detain certain aliens beyond the removal period).

**B. There Is a Good Reason to Believe Removal Is Not Reasonably Foreseeable**

Second, Respondents argue that the "burden of proof [has not] shift[ed] to ICE to show the likelihood of removal" in the reasonably foreseeable future. ECF No. 7 at 2. They assert that "Petitioner cannot show 'good reason' to believe that removal to Afghanistan is unlikely in the reasonably foreseeable future," and thus the burden does not shift to the government per *Zadvydas*.

But Petitioner's final order of removal became administratively final almost 22 months ago. As the period of post-removal-order confinement grows, the burden on the Government to justify continued detention grows along with it. *Zadvydas*, 533 U.S. at 701. The fact that Petitioner has been detained "well beyond six months after [his] removal order[] became final" is sufficient to shift the burden to the Government. *Clark*, 543 U.S. at 386.

**C. The Government Fails to Show a Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Third, Respondents argue that even if the burden has shifted, they can nonetheless show that removal is reasonably foreseeable. They assert the following to show that removal is reasonably foreseeable:

(1) 60 Afghans were removed in the first quarter of 2025;

(2) "ICE submitted a travel document request to the government of Afghanistan";

(3) "ICE submitted a Form I-269, Certificate of Identity[,] to assist in obtaining the Afghanistan travel document;"

(4) ICE "has taken affirmative steps to secure acceptance from third countries" for Petitioner's removal, and some of these requests "remain pending";

ECF No. 7 at 13. Based on this evidence, supported by a single affidavit from an ICE officer, Respondents contend that "[r]emoval is likely in the reasonably foreseeable future." ECF No. 7 at 13–14.

But Petitioner has been detained almost 22 months. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. ICE's few "affirmative steps" toward securing travel documents do not show that removal is reasonably foreseeable. *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (granting a petition based on *Zadvydas* when the Government was unable to secure travel documents from Liberia). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Petitioner's detention is unlawful and he must be released.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED.** It is **ORDERED** that:

1.      Respondents shall **RELEASE** Petitioner (A246-206-757) from custody to a public place by **no later than March 31, 2026**;

6

2.      Respondents shall **FILE** a Status Report **no later than April 1, 2026**, confirming that Petitioner has been released; and

3.      Petitioner's Motion for Release (ECF No. 11) is **DENIED AS MOOT.**

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this March 27, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE